[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 988 
Mutual Savings Life Insurance Company petitions this Court for a writ of mandamus directing Judge Thomas ap R. Jones to vacate his order granting Crystal Taite's motion to compel Mutual Savings to produce (1) applications for insurance completed by Jennifer Abrams for customers of Mutual Savings and (2) records of complaints alleging fraud or misrepresentation made to Mutual Savings by its customers in Alabama for the past 10 years. We deny the petition.
 Facts
In February 2002, Jennifer Abrams, an agent for Mutual Savings, sold Earline Taite a "Final Expense Insurance" policy valued at $5,000. The policy named Crystal Taite as the beneficiary. Earline Taite died in May 2002. Crystal Taite submitted a claim on the policy to Mutual Savings. After investigating, Mutual Savings denied the claim because, it said, Earline Taite did not disclose on her application for insurance that she had a heart condition and that she had undergone a coronary artery bypass graft in January 2002.
In August 2003, Crystal Taite sued Mutual Savings, alleging that Abrams "knowingly *Page 989 
falsified" the application for insurance to "reflect that the insured, Earline Taite, had no pre-existing heart condition." Taite maintained that Earline Taite revealed her heart condition to Abrams while Abrams was assisting her in completing the application but that Abrams did not include that information on the application. Taite alleged claims of fraudulent misrepresentation, deceit, fraudulent suppression, breach of contract, and bad faith denial of the claim.
In her first set of interrogatories and requests for production to Mutual Savings, Taite requested:
 "12. Has [Mutual Savings] received a complaint (oral, written or otherwise) in the State of Alabama over the past ten (10) years which alleges fraud or misrepresentation regarding the terms of a life insurance policy or in the application process of the proceeding. If so, for each such complaint, produce the name, address and telephone number of each complainant, identify all employees of [Mutual Savings] that received, investigated and/or responded to said complaint, and attach to your responses all documents related to each such complaint, including but not limited to, the complaint itself, memorandums, investigative findings, investigative reports, correspondences, records of disciplinary actions, etc."
Mutual Savings responded:
 "Mutual Savings objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of relevant and admissible information, is not reasonably tailored to the allegations of [Taite's] Complaint, and constitutes information that is available to [Taite] from the public records of the State of Alabama."
Taite further requested:
 "13. Please produce the application of each and every person or other legal entity who purchased an insurance policy from [Mutual Savings] and which application was completed in part or in whole by Jennifer Abrams in the State of Alabama from 1999 until the present."
Mutual Savings responded:
 "Mutual Savings objects to this request because it is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of relevant and admissible information, encompasses confidential and proprietary records in the nature of trade secrets, identifies persons not a party to this lawsuit without their authorization, and requests information not discoverable pursuant to the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 et seq."
In December 2003, Taite moved to compel Mutual Savings to respond to these discovery requests, arguing that the information requested is relevant to "display plan, motive or scheme on behalf of" Mutual Savings and that the information constituted "pattern and practice discovery in a fraud action." In January 2004, Mutual Savings responded to the motion to compel, arguing that the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq. ("the GLBA"), prohibited disclosure of the information. Additionally, Mutual Savings moved for a protective order as to Abrams's personnel file. After conducting a hearing, the trial court granted Taite's motion to compel. The trial court further ordered the parties to submit an "appropriate protective order" to maintain the confidentiality of the customers' nonpublic personal information contained in the insurance applications and records of complaints of fraud or misrepresentation concerning life-insurance policies. Mutual Savings moved for clarification of the order *Page 990 
to compel and/or for a reconsideration of its motion for a protective order. The trial court denied the motion.
Standard of Review
 "Mandamus is an extraordinary remedy and will be granted only where there is `(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala. 1991). This Court will not issue the writ of mandamus where the petitioner has `"full and adequate relief"' by appeal. State v. Cobb, 288 Ala. 675, 678, 264 So.2d 523, 526 (1972) (quoting State v. Williams, 69 Ala. 311, 316
(1881)).
 "Discovery matters are within the trial court's sound discretion, and this Court will not reverse a trial court's ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Home Ins. Co. v. Rice, 585 So.2d 859, 862 (Ala. 1991). Accordingly, mandamus will issue to reverse a trial court's ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions.
 "Generally, an appeal of a discovery order is an adequate remedy, notwithstanding the fact that that procedure may delay an appellate court's review of a petitioner's grievance or impose on the petitioner additional expense; our judicial system cannot afford immediate mandamus review of every discovery order. See Walker v. Packer, 827 S.W.2d 833, 842 (Tex. 1992) (`Mandamus disrupts the trial proceedings, forcing the parties to address in an appellate court issues that otherwise might have been resolved as discovery progressed and the evidence was developed at trial.'). In certain exceptional cases, however, review by appeal of a discovery order may be inadequate, for example, (a) when a privilege is disregarded, see Ex parte Miltope Corp., 823 So.2d 640, 644-45 (Ala. 2001) (`If a trial court orders the discovery of trade secrets and such are disclosed, the party resisting discovery will have no adequate remedy on appeal.'); (b) when a discovery order compels the production of patently irrelevant or duplicative documents, such as to clearly constitute harassment or impose a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party, see, e.g., Ex parte Compass [Bank], 686 So.2d 1135, 1138 (Ala. 1996) (request for `every customer file for every variable annuity' including annuity products the plaintiff did not purchase); (c) when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party's entire action or defense so that, in either event, the outcome has been all but determined, and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that the appellate court cannot review the effect of the trial court's alleged error. The burden rests on the petitioner to demonstrate that its petition presents such an exceptional case — that is, one in which an appeal is not an adequate remedy. See Ex parte Consolidated Publ'g Co., 601 So.2d 423, 426 (Ala. 1992). . . ."
Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813-14 (Ala. 2003). *Page 991 
 Legal Analysis
Mutual Savings contends that the trial court exceeded the scope of its discretion when it ordered Mutual Savings to produce to Taite copies of the applications for insurance and other records of complaints from policyholders alleging fraud or misrepresentation because, it says, that production of nonpublic personal information violates the GLBA.
The GLBA, 15 U.S.C. § 6801, states:
 "(a) Privacy obligation policy. It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.
 "(b) Financial institutions safeguards. In furtherance of the policy in subsection (a) of this section, each agency or authority described in section 6805(a) of this title shall establish appropriate standards for the financial institutions subject to their jurisdiction relating to administrative, technical, and physical safeguards —
 "(1) to insure the security and confidentiality of customer records and information;
 "(2) to protect against any anticipated threats or hazards to the security or integrity of such records; and
 "(3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer."
The GLBA further mandates that a financial institution provide a customer with notice of a request for disclosure of nonpublic personal information and an opportunity to opt out of the disclosure of that information before it releases any of the customer's "nonpublic personal information to a nonaffiliated third party." 15 U.S.C. § 6802. Congress further provided certain exceptions to the financial institution's obligation to provide a customer notice of the requested disclosure and the opt-out requirement. For example, Congress specifically provided that a financial institution may disclose nonpublic personal information
 "to comply with Federal, State, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities; or to respond to judicial process or government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law."
15 U.S.C. § 6802(e)(8) (emphasis added).
Here, the parties agree that Mutual Savings is a financial institution and that it is therefore required to comply with the provisions of the GLBA. See FTC Privacy of Consumer Financial Information, 16 C.F.R. §§ 313.3(k)(1), 313.3(o)(1). Taite is a "nonaffiliated third party." See 16 C.F.R. § 313.3(m)(1). The information requested by Taite is "nonpublic personal information" under the GLBA. See 16 C.F.R. § 313.3(n)(1). Thus, the only question presented is whether the trial court can order a financial institution to disclose a customer's nonpublic personal information during civil discovery pursuant to an exception to the GLBA.
Our research indicates that the United States Supreme Court has not addressed whether such an exception to the GLBA — i.e., one that provides that a trial court can order a defendant financial institution to disclose a customer's nonpublic personal information to a plaintiff to comply with civil discovery — exists and only a few federal *Page 992 
and state courts have issued decisions on this particular question. Because the United States Supreme Court has not ruled on this issue and because there is limited persuasive authority from other jurisdictions, this Court is free to select the interpretation it considers most reasonable. See Ex parteBozeman, 781 So.2d 165 (Ala. 2000) (recognizing that when the United States Supreme Court has not addressed how a particular federal statute should be interpreted and the federal circuit courts are split on the interpretation, this Court may select the interpretation it considers most sound).
As we begin our analysis we are mindful that
 "[t]he fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect. Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County, 589 So.2d 687 (Ala. 1991)."
IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346
(Ala. 1992).
In Marks v. Global Mortgage Group Inc., 218 F.R.D. 492
(S.D.W.Va. 2003), the United States District Court for the Southern District of West Virginia held that15 U.S.C. § 6802(e)(8) permits a financial institution to disclose a customer's nonpublic personal financial information to comply with a discovery request in a federal civil action. To support its holding, the district court reasoned that Congress included in the GLBA the "syntactically separate and distinct" phrase "to respond to judicial process" to accommodate civil discovery.218 F.R.D. at 496. The court further noted that the legislative history of the House Bill that became the GLBA indicated that Congress "envisaged an independent judicial process [i.e., civil discovery] exception." 218 F.R.D. at 496. The court explained that "even if the GLBA included no exception for civil discovery, the mere fact that a statute generally prohibits the disclosure of certain information does not give parties to a civil dispute the right to circumvent the discovery process."218 F.R.D. at 496. Lastly, the court noted that Congress, when drafting the GLBA, incorporated language similar to the Privacy Act, see 5 U.S.C. § 522a(b), and the Commodity Exchange Act, see7 U.S.C. §§ 1 to 17, which the court interpreted as reflecting a concern with the widespread dissemination of nonpublic information and not with disclosure of nonpublic information in a judicial proceeding. 218 F.R.D. at 496.
The interpretation of the GLBA by the United States District Court in Marks is reasonable. We hold that by incorporating the phrase "to respond to judicial process," see15 U.S.C. § 6802(e)(8), Congress created an exception applicable to situations in which the trial court orders the disclosure of a customer's nonpublic personal information during discovery in a civil action. A plain reading of the GLBA reveals that the phrase "to respond to judicial process" is independent from the phrase "to respond to . . . government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes authorized by law." See15 U.S.C. § 6802(e)(8). Clearly, when a party discloses information pursuant to a court order, the party engages in a judicial *Page 993 
process. See Ex parte National Western Life Ins. Co.,899 So.2d 218 (Ala. 2004) (providing a thorough explanation of the reasons civil discovery falls within the judicial-proceedings exception to the GLBA). Therefore, we hold that under the expressed "judicial-process" exception, the trial court did not exceed the scope of its discretion when it ordered Mutual Savings to disclose its customers' nonpublic personal information without providing notice to those customers engaging in the opt-out requirement.
We recognize that in enacting the GLBA Congress expressed an interest in protecting the privacy of the nonpublic financial information of consumers, see 15 U.S.C. § 6801. By enacting the GLBA, Congress evidenced its intent to respect and to protect the privacy of individuals' nonpublic personal information. See15 U.S.C. § 6801(b)(1) and (3) (stating that the intent of the GLBA is to "insure the security and confidentiality of customer records and information" and "to protect against unauthorized access to or use of such records or information which could result in substantial hardship or inconvenience to any customer"). Consequently, the privacy obligation imposed upon financial institutions extends to those who receive customers' nonpublic personal information when a financial institution, pursuant to a court order, releases the information to a nonaffiliated third party. Therefore, a court, when exercising its broad discovery discretion by ordering the discovery of customers' nonpublic personal information, should also issue a comprehensive protective order[1] to guard the customers' privacy.
 Conclusion
Based on the foregoing, we hold that the trial court did not exceed its discretion in granting Taite's motion to compel the requested discovery. Mutual Savings has not established a clear legal right to the relief sought; therefore, the petition is denied.
PETITION DENIED.
NABERS, C.J., and HOUSTON, SEE, LYONS, and BROWN, JJ., concur.
JOHNSTONE, J., concurs specially.
HARWOOD and WOODALL, JJ., concur in part and express no opinion in part.
[1] For example, a comprehensive protective order could provide that any information not relevant to the pending litigation be redacted to protect the privacy of individuals, i.e., any and all unnecessary names, financial information, medical information, etc., contained in the documents produced pursuant to the discovery order.