I concur in affirming the summary judgment as to Dr. Robert P. Carraway. I must, however, respectfully dissent from affirming the summary judgments as to defendant radiologists, Dr. H. Chaney Aderholt, Dr. Randy Finley, and Dr. Steven Manzi.
Few areas of the law offer a more fertile field for turning simplicity into complexity than statutory construction. The main opinion is a classic example. The legislature responded to a perceived need to codify the bases upon which an expert witness would be permitted to testify in a medical-malpractice case by enacting § 6-5-548, Ala. Code 1975. So as to provide a complete perspective, I set forth the statute in its entirety:
 "§ 6-5-548. Burden of proof; reasonable care as similarly situated health care provider; no evidence admitted of medical liability insurance.
 "(a) In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.
 "(b) Notwithstanding any provision of the Alabama Rules of Evidence to the contrary, if the health care provider whose breach of the standard of care is claimed to have created the cause of action is not certified by an appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself or herself out as a specialist, a `similarly situated health care provider' is one who meets all of the following qualifications:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state.
 "(2) Is trained and experienced in the same discipline or school of practice.
 "(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.
 "(c) Notwithstanding any provision of the Alabama Rules of Evidence to the contrary, if the health care provider whose breach of the standard of care is claimed to have created the cause of action is certified by an appropriate American board as a specialist, is trained and experienced in a medical *Page 1027 
specialty, and holds himself or herself out as a specialist, a `similarly situated health care provider' is one who meets all of the following requirements:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state.
 "(2) Is trained and experienced in the same specialty.
 "(3) Is certified by an appropriate American board in the same specialty.
 "(4) Has practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred.
 "(d) Notwithstanding any provision of the Alabama Rules of Evidence to the contrary, no evidence shall be admitted or received, whether of a substantive nature or for impeachment purposes, concerning the medical liability insurance, or medical insurance carrier, or any interest in an insurer that insures medical or other professional liability, of any witness presenting testimony as a `similarly situated health care provider' under the provisions of this section or of any defendant. The limits of liability insurance coverage available to a health care provider shall not be discoverable in any action for injury or damages or wrongful death, whether in contract or tort, against a health care provider for an alleged breach of the standard of care.
 "(e) The purpose of this section is to establish a relative standard of care for health care providers, A health care provider may testify as an expert witness in any action for injury or damages against another health care provider based on a breach of the standard of care only if he or she is a `similarly situated health care provider' as defined above. It is the intent of the Legislature that in the event the defendant health care provider is certified by an appropriate American board or in a particular specialty and is practicing that specialty at the time of the alleged breach of the standard of care, a health care provider may testify as an expert witness with respect to an alleged breach of the standard of care in any action for injury, damages, or wrongful death against another health care provider only if he or she is certified by the same American board in the same specialty."
Section 6-5-548(a) imposes on a plaintiff in an action against a health-care provider the burden of establishing a breach of the standard of care. Under § 6-5-548(a) a plaintiff must prove by substantial evidence that the conduct of the accused health-care provider fell below the standard applicable to other similarly situated health-care providers in the same general line of practice in a like case. Subsections (b) and (c) of § 6-5-548 elaborate upon the phrase "similarly situated health care provider" appearing in §6-5-548(a). Subsection (b) defines "similarly situated health care provider" for purposes of actions against health-care providers who are generalists as opposed to specialists. In such instance, the legislature has set forth three criteria — licensure, training and experience in the relevant area of practice, and practice in that area within one year preceding the date of the alleged breach of the standard of care. Section 6-5-548(c) defines "similarly situated health-care provider" for purposes of actions against health-care providers who are specialists as opposed to generalists. In such instance, the legislature has set forth four criteria — licensure, training and experience in the relevant specialty, certification in the relevant specialty, and practice in the relevant specialty during the year preceding *Page 1028 
the date of the alleged breach of the standard of care.
Section 6-5-548(d) deals with two subjects. First, it bans any evidence related to medical-liability insurance of any witness testifying as a similarly situated health-care provider. Second, it prevents discovery of the limits of insurance in an action against a health-care provider.
Section 6-5-548(e) is a statement of the legislative purpose of creating a relative standard of care with respect to actions against health-care providers. It then provides that a health-care provider may testify against another health-care provider only if he or she is a "similarly situated health care provider" as defined in the applicable subsection of the statute, depending upon whether the accused health-care provider is as generalist or a specialist.
I quote the statute verbatim and then summarize its provisions to show how a rather straightforward enactment of the legislature has been distorted by the main opinion's strained interpretation of various provisions of that enactment. Subsections (b) and (c) of § 6-5-548, with their definitions of "similarly situated health care provider," depending on whether the accused health-care provider is a generalist or a specialist, each begin with the following introductory phrase: "Notwithstanding any provision of the Alabama Rules of Evidence to the contrary." In plain English, this introductory phrase appears to the average reader to be a statement from the legislature requiring that, regardless of whatever the Alabama Rules of Evidence might provide, this is the standard the legislature wishes to employ. However, the main opinion has effectively revised that phrase to read as follows: "Notwithstanding any provision of the Alabama Rules of Evidence expressing a less stringent standard." Of course, it is beyond the prerogative of this Court to rewrite statutes to reach a result that it might deem to be more satisfactory than the one reached by applying the statute as written by the legislature. As we have stated in numerous cases, "this Court is not at liberty to rewrite statutes or to substitute its judgment for that of the Legislature." Exparte Carlton, 867 So.2d 332, 338 (Ala. 2003). See also, e.g., Ex parte National Western Life Ins. Co.,899 So.2d 218, 226-27 (Ala. 2004); Wal-Mart Stores, Inc. v.Patterson, 816 So.2d 1, 6 (Ala. 2001); and Omni Ins.Co. v. Foreman, 802 So.2d 195, 199 (Ala. 2001).
Next, the main opinion parses § 6-5-548 for instances where the word "shall" appears and then uses the presence of that word as the basis to distort the plain meaning of the word "may" as that word appears twice in § 6-5-548(e), which provides: "A health care provider may testify as an expert witness . . . only if he or she is a `similarly situated health care provider' as defined above." In plain English, this sentence appears to the average reader to be a statement from the legislature that a health-care provider ispermitted to testify as an expert only if he or she is a similarly situated health-care provider as defined in either subsection (b) or (c) of $ 6-5-548. Nevertheless, the main opinion treats "may" as vesting in the trial court discretion to go beyond the definition of a similarly situated health-care provider as provided in subsection (b) or (c) of § 6-5-548. Had the legislature used "shall," instead of "may," the main opinion states, it would have deprived the trial court of the right to disallow merely cumulative testimony.
Under the circumstances here presented, construing an act of the legislature addressing the problem of establishing criteria for expert witnesses in medical-malpractice actions against health-care providers, *Page 1029 
I consider the word "may" to be the equivalent of "is permitted." This interpretation of "may" as interchangeable with "is permitted" is not without substantial foundation. SeeBlack's Law Dictionary 1000 (8th ed.2004), where the first definition of "may" is "[t]o be permitted to the plaintiff may close." Following the reasoning of the main opinion, one would have to conclude that a statute providing that "the plaintiff may close" should be construed as saying that the trial court has discretion in refusing to permit the plaintiff to close, as opposed to merely acknowledging that the plaintiff has the right or is permitted to close. I could go on with numerous references to dictionaries other than legal dictionaries. The following from the Merriam-Webster Online Dictionary[19] is representative: "May . . . have permission to you may go now: be free to a rug on which children may
sprawl — C.E. Silberman — used nearlyinterchangeably with can." (Emphasis added.) I agree with the main opinion that "may" is permissive, but the permission is here granted by the legislature to the witness and not to the trial court so that it can add new criteria not set forth in the statute.
After studying Justice See's interesting analogies involving moisture content and baseball championships, I cannot resist the temptation to try to make my point through analogy. While we are handicapped in our construction of § 6-5-548 by the absence of a legislative history, perhaps the next best thing is a hypothetical fact situation involving a member of the legislature's requesting assistance in drafting a statute to address a perceived need. Suppose a member of the legislature asked the Legislative Reference Service to draft a statute that would deal with the member's concerns over excessively casual courtroom attire by male attorneys by setting a standard for courtroom attire and stating a rule that emphasizes the importance of compliance with the new statute. A first draft of the legislation is prepared; it contains paragraph (a) stating that male attorneys appearing in court must be properly attired; paragraph (b) stating that notwithstanding any rule of etiquette to the contrary, suitable attire for a male attorney shall be a dark business suit and a white shirt; and paragraph (c) providing: "A lawyer shall appear in court if he is suitably attired as defined in paragraph (b)." When the member of the legislature is shown a copy of the proposed bill, the member makes the valid point that paragraph (c), as drafted, produces the absurd result that all attorneys who happened to show up for work wearing a dark business suit and white shirt would be required to appear in court, whether the attorney had business in court or not. So paragraph (c) is revised to read: "A lawyermay appear in court if he is suitably attired as defined in paragraph (b)." This version reaches the sensible result of permitting the person subject to the legislatively defined dress code to make the decision as to whether he will appear in court on a given day. The member studies the bill further and asks that the importance of compliance be emphasized. Paragraph (c) is again revised to read, "A lawyer may appear in court only if he is suitably attired as defined in paragraph (b)."
After the statute is enacted, attorney Hawkins[20] is denied admission to the courtroom because, although he is wearing a dark business suit and a white shirt, he is not wearing a necktie. In litigation over *Page 1030 
the propriety of excluding from the court-room the attorney who wore no necktie, I assume that a majority of this Court would hold that the attorney had been properly excluded from the courtroom, based upon (1) rules of etiquette requiring a necktie, notwithstanding the plainly stated inapplicability of rules of etiquette in subparagraph (b), (2) the absence of the word "shall" and the use of the word "may" in paragraph (c), and (3) some special meaning drawn from the presence of the word "only" as the precursor to "if in paragraph (c). And, I respectfully submit, that result would be just as inconsistent with the result called for by the plain language of the statute as is the result the majority reaches in this case.
Under the main opinion, simplicity has become complexity — notwithstanding the plain language of the statute. Under the main opinion, the Alabama Rules of Evidence have not been displaced in all respects; as the statute plainly requires, they are displaced only where necessary to promote stringency but not lenity. Finally, under the main opinion, § 6-5-548(e) does not give a witness permission to testify, even though he satisfies the criteria set forth in either subsections (b) and (c) of § 6-5-548, contrary to the plain meaning of the statute. I must respectfully dissent as to the defendant radiologists, Dr. H. Chaney Aderholt, Dr. Randy Finley, and Dr. Steven Manzi.
WOODALL and PARKER, JJ., concur.
[19] On the date this opinion was released the definition could be found at http://www. merriam-webster.com.
[20] I have shamelessly borrowed the subject of many stories told by the late Chief Justice Howell Heflin.